PER CURIAM.
This cause is before us to review the report' of the referee of the Board of Governors of The Florida Bar entered November 8, 1973. The referee found respondent guilty as charged in the Bar’s complaint, and recommended a public reprimand.
Although respondent defended against the action below, he has failed to timely petition this Court for review of the findings and recommendations of the referee.
The report of the referee reads, in pertinent part, as follows:
“After considering all of the pleadings, exhibits and evidence before me I find that:
“1. The Respondent, ANTHONY F. CAP-ODILUPO, at all times material and relative to the charges contained in the Complaint, held the following positions with Florida’s Lake Okeechobee Land Company: Secretary-Treasurer; Director; Resident-Agent ; Minority Stockholder; and Corporate Attorney.
“2. On September 16th, 1968, Florida’s Lake Okeechobee Land Company and Barbara Joyce executed an Agreement of Purchase and Sale for the purchase by Barbara Joyce of two lots, numbered 11 and 12, Block 23, Conner Gables, recorded in Plat Book 3, Page IS, Official Records of Okeechobee County, Florida. On that same day, Florida’s Lake Okeechobee Land Company and Barbara McDonough executed an Agreement of Purchase and Sale for the purchase by Barbara McDonough of two lots, numbered 9 and 10 in Block 23 of Conner Gables.
“3. During the calendar year of 1969, Barbara Joyce assigned to Barbara Mc-Donough all of her right, title and interest in and to that certain Agreement of Pur *583 chase and Sale dated September 16th, 1968, with reference to Lots 11 and 12 of Block 23, of Conner Gables, and said assignment was executed in the law offices of the Respondent and witnessed by the Respondent.
“4. Barbara McDonough was and is entitled to warranty deeds conveying the said four lots to her pursuant to the Agreements of Purchase and Sale and the Assignment.
“5. In order to assist her in obtaining the warranty deeds to which she was entitled, Barbara McDonough employed August C. Paoli, a member of the Florida Bar practicing in Hollywood, Florida.
“6. On September 9th, 1971, August C. Paoli, as the legal representative of Barbara McDonough, wrote to the Respondent inquiring about the property. No response or communication whatsoever was forthcoming from Respondent.
“7. Mr. Paoli again wrote to Respondent on October 6th, 1971, requesting a reply to previous correspondence. On October 13, 1971, Respondent answered the said letters, stating that he represented, and was connected with, Florida’s Lake Okeechobee Land Company, and the Respondent further informed Mr. Paoli that it was necessary to obtain the signature of his father (in Boston) on the deeds; that it was necessary to contact Mr. Bedard (who respondent erroneously stated was the corporation’s treasurer) to determine if any interest was due; and during the interim, any interest would be waived.
“8. On December 9th, 1971, August C. Paoli again wrote to Respondent inquiring if any progress had been made in connection with the matter. There was no reply from Respondent to said letter.
“9. On December 30th, 1971, Mr. Paoli wrote to Respondent requesting a reply to the letter of December 9th, 1971. Again, there was no response from the Respondent.
“10. On April 21, 1972, Mr. Paoli wrote Respondent concerning his failure to respond to the previous inquiries and informed the Respondent of possible legal action and a complaint to the Florida Land Sales Board. This elicited no response from the Respondent.
“11. On or about December 20th, 1972, August C. Paoli had a telephone conversation with the Respondent concerning the execution of warranty deeds to Barbara McDonough for the four lots involved herein. During said conversation, the Respondent informed Mr. Paoli that his father, Jerry Capodilupo, would be in Florida over the Christmas holidays and would execute warranty deeds to Barbara Mc-Donough at that time.
“12. On January 12, 1973, August C. Pa-oli informed Respondent by letter of his intentions: (1) To press the Florida Land Sales Board for action against Florida’s Lake Okeechobee Land Company; (2) to bring suit for damages against the Respondent and his father; and (3) present the matter to the Bar Association.
“13. Florida’s Lake Okeechobee Land Company was not at the time of the execution of the above mentioned Agreements of Purchase and Sale, nor at the time of the execution of the Assignment of the Joyce contract to Barbara McDonough, nor at any other time the record owner of title to the four lots. At all times material, the said four lots were owned and title was vested in Jerry Capodilupo (the Respondent’s father). Florida’s Lake Okeechobee Land Company had only an option to purchase a parcel of land from Jerry Capodilupo. This included the aforesaid four lots, but could be exercised only after the Florida’s Lake Okeechobee Land Company had sold SO lots. Florida Lake Okeechobee Land Company never sold the requisite number of lots to enable it to exercise the option, and, in fact, Barbara McDonough was the only purchaser of lots in the relevant parcel of land who completed her payments. Accordingly, the option to purchase was not exercised, and Florida’s Lake Okeechobee Land Company never became the record title owner of the four lots.
*584 "14. The Respondent knew well prior to the execution of the Agreement of Purchase and Sale by Barbara McDonough and the Assignment to her of the Joyce contract that the four lots involved were owned by Jerry Capodilupo, not by Florida’s Lake Okeechobee Land Company.
“IS. The Agreements of Purchase and Sale executed by Florida’s Lake Okeechobee Land Company refer to it as the owner of the property being sold. The Agreements of Purchase and Sale further fail to make any mention of the fact that the contract seller had merely an option to purchase the property from Jerry Capodilupo. The Agreements were not made conditional upon the performance of any act except full payment.
“16. At no time during his conversations with Barbara McDonough or during his written and oral communications with August C. Paoli, did the Respondent inform Barbara McDonough or Mr. Paoli that the true owner of the lots was Jerry Capodilu-po.
“17. During the early part of 1973, the Respondent had a personal conversation with William A. Hoffman, Chairman of the Board and President of the First National Bank of Hollywood concerning the execution by the bank of certain partial releases of the bank’s mortgage on the four lots involved. The First National Bank of Hollywood held a mortgage on the property, with the mortgagor being Jerry Capodi-lupo. Mr. Hoffman informed Anthony Capodilupo, the Respondent, that the bank had sufficient security and was prepared the execute releases of the mortgage on the four lots. The Respondent did not contact Mr. Hoffman further on the matter.
“18. During the calendar year 1971, the Respondent received certain payments on the four lots in question from Barbara McDonough. The initial checks received by the Respondent were forwarded to Oli-va Bedard, who held the books and records of the company. Although the Respondent was designated as Secretary-Treasurer of the company, he never functioned in that capacity and did not have custody of the books and records.
“19. During 1971, the Respondent received further mail from Barbara Mc-Donough, which he assumed contained payments on the lots, but nevertheless he allowed the mail to accumulate without ever opening it. It was only at the hearing in this matter that, pursuant to Stipulation of Counsel, the accumulated letters, which had remained in the possession of the Respondent, were opened by the Referee and the contents read into the record. The unopened letters contained money orders and checks payable to Florida’s Lake Okeechobee Land Company from Barbara Mc-Donough in the amount of $1,200.00 in partial payment on the property.
“20. The Agreement of Purchase and Sale executed by Florida’s Lake Okeechobee Land Company and Barbara Mc-Donough contained the following provision: ‘If purchaser fails to make any payment due hereinunder, whether such failure be voluntary or involuntary, the only right of the Owner arising thereunder shall be that of termination of this agreement and retention of all sums previously paid as liquidated damages.’ The failure of the Respondent to open the correspondence from Barbara McDonough and acknowledge receipt of payments on the four lots could have resulted in the company holding Barbara McDonough in default on payments and in terminating the Agreement of Purchase and Sale, with the funds being retained by Florida’s Lake Okeechobee Land Company as liquidated damages.
“21. The letters from Barbara Mc-Donough to the Respondent containing checks or money orders in payment on the four lots consisted of seven envelopes mailed during the period from December 2nd, 1970, through July 1st, 1971.
“22. During the first year of the operation of Florida’s Lake Okeechobee Land Company, contracts for the sale of eight to *585 ten lots were entered into, however, the purchasers defaulted in payment and all monies collected were retained by the vendor, despite the fact that it was never the owner of the property.
“23. It was not until the hearing of September 13th, 1973, that the Respondent offered to produce executed deeds conveying the four lots to Barbara McDonough. However, the Respondent did not have a partial release from the First National Bank of Hollywood, as mortgagee on the subject property.
“I have not been advised that title to the four lots has ever been vested in Miss McDonough. I am of the opinion that the findings made above are supported by a clear and convincing preponderance of evidence in the record.”
On the basis of these findings, the Referee made the following recommendation of guilt:
“I recommend that the Respondent should be found guilty as charged in the Complaint and specifically that he be found guilty of violation of his oath as an Attorney, of Article XI, Rule 11.02 of the Integration Rule [32 F.S.A.], of Canon’s 21 and 29 [32 F.S.A.], of Additional Rule 27 [32 F.S.A.], of Disciplinary Rule 1-102 [(A)] (4) and (5) of the Code of Professional Responsibility and of Disciplinary Rule 6-101 (a) [A] (3) of the Code of Professional Responsibility [32 F.S.A.].”
Finally, the Referee made the following recommendation of discipline:
“The Respondent accepted appointment as Secretary-Treasurer of Florida’s Lake Okeechobee Land Company, but has apparently been derelict in his duties by never acquiring custody of the books and records. He was not familiar with the corporations financial affairs. He had reason to believe that the letters from Miss McDonough, which he allowed to accumulate in his office, contained payments required by the contracts for sale. He had opened the first such letter to be received by him and knew that it contained a payment, and should have realized that the letters which followed were of a similar nature. As the attorney for the vendor corporation he must have known of the penalty for default in payment by Miss McDonough, and therefore, showed a reckless disregard for her rights in the premises.
“The evidence does not cause me to conclude, however, that the Respondent deliberately tried to bring about a situation which would permit his father to keep the property while the corporation retained the payments which had been made, and certainly, he has not acted in a way that would allow him to profit personally. In other words, I do not see any basis for disbarment.
“I recommend that the Respondent be reprimanded publicly and am of the opinion that such a reprimand will protect the public adequately.”
>}« ‡ íj< ;{« jjí
“It is recommended that all costs and expenses . . . should be charged against the Respondent.”
The record and the Report of the Referee have been examined by this Court. It is ordered that the recommendation of the Referee as to guilt and discipline that Respondent be administered a public reprimand and pay the costs and expenses in this proceeding be and the same is approved and adopted as the judgment of this Court. The filing of this opinion constitutes a public reprimand, and execution is hereby directed to issue for the costs against Respondent.
It is so ordered.
ROBERTS, Acting C. J., and ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.